UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-20990-CIV-MORENO

LIG INSURANCE CO. LTD.,

    Plaintiff,

vs.

INTER-FLORIDA CONTAINER TRANSPORT,
INC., 10997 PROJECT, INC., and LEONEL
DIAZ,

    Defendants.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case involves three sealed containers containing 5,352 LCDcomputer monitors stolen from a storage facility operated and used by Defendant Inter-Florida Container Transport, Inc. ("Inter-Florida Container Transport"). The storage facility is on land owned by Defendant 10997 Project. Defendant Leonel Diaz is 50% owners of Defendant 10997 Project. Mercedes Torres, the wife of Leonel Diaz, is also the corporate representative of Defendant Inter-Florida Container Transport, Inc.

As a result of the loss, Plaintiff LIG Insurance Company, Ltd., as the insurance carrier of LG Electronics Miami, Inc., paid the invoice claim of $552,547. It now brings a complaint alleging breach of contract (Count 1), bailment (Count 2), negligence (Count 3), and liability for alter ego and instrumentality of fraud (Count 4). The Court heard evidence at a non-jury trial and pursuant to Fed. R. Civ. P. 52, makes specific findings of fact and separate conclusion of law as detailed below. After making its credibility findings, the Court holds that all three defendants are liable for the loss of the

cargo on Counts 1 and 4, but finds for Defendants on Counts 2 and 3.

## I. Factual and Procedural Background

Prior to trial, the Court granted Plaintiff's Motion for summary judgment finding that the containers were delivered from Indonesia and China to Miami pursuant to through bills of lading. The Court found that the Plaintiff satisfied the Carriage of Goods by the Sea Act, 46 U.S.C.§ 30701 *et. seq.* ("COGSA"). At trial, the disputed involved an assessment of the responsibility of the lost cargo.

The three containers were released by the FEC into the custody and control of Inter-Florida Container Transport. The seals on all three containers were intact at that time. Inter-Florida Container Transport did not deliver the containers to the final destination upon assuming custody and control. Rather, Inter-Florida Container Transport transported the containers to the storage yard owned by Defendant 10997 in Medley, Florida for overnight weekend storage. The trucks were parked with the keys inside of them. On Sunday, June 12, 2011, Frank Soto, an employee of Inter-Florida Container Transport, discovered that two of the containers had been stolen, and that the third container had been emptied of its contents at the storage facility. Defendant Diaz told Soto not to call the police at that time. On June 13 and 15, containers SPKU4076416 and CRSU1392772 were respectively found empty.

The storage yard located at 9601 Northwest 109th Street, Medley, Florida where the LCD monitors were stored is owned by Defendant 10997. Defendant 10997 has no employees. Inter-Florida Container Transport uses the storage yard at 9601 109th street pursuant to an unwritten agreement with Defendant 10997 and Diaz. Diaz and Jose Sigler are the only presidents of Defendant 10997 and have been the only presidents since January 1, 2011. Diaz is currently a

director of Inter-Florida Container Transport, and was a director of Inter-Florida Container Transport at the time the computer monitors were stolen from the storage yard. Mercedes Torres, Diaz's wife, is the President and owner of Inter-Florida Container Transport.

The Court has already found that the Carmack Amendment did not apply to "a shipment originating overseas under a single through bill of lading.[1] The Court has also held that the Plaintiff is entitled to judgment as a matter of law under the Carriage of Goods by the Sea Act that the LCD monitors were delivered into Inter-Florida Container Transport's possession, custody, and control in good order and condition, and that the monitors were lost while in Inter-Florida Container Transport's possession, custody, and control.[2]

## II. Findings of Fact and Evidence at Trial

Leonel Diaz has a familial relationship with the other individuals in this case, and the corporate defendants are in an incestuous relationship with each other. Defendant Leonel Diaz is married to Mercedes Torres, and Mayline Torres is their daughter. Leonel Diaz is a 50% owner of Defendant 10997, and Leonel Diaz is the corporate representative. **Record 25:23.** Mercedes Torres is the president and sole owner of Defendant Inter-Florida Container Transport. **31:11-15; 58:1.** Mayline Torres is the corporate representative for Inter-Florida Container Transport, and Leonel Diaz is the Treasurer. **Record 25:25-26:1; 58:1-2.** Leonel Diaz was an incorporating Director of Inter-Florida Container Transport, and was a Director in 2011. **Exs. 4, 5.** Mercedes Torres is also employed by Miami Trucking, a corporation that Plaintiff elected not to bring into this action as a defendant. **30:5-6.** Inter-Florida Container Transport operates the storage yard at 9601 NW 109th

---

[1] *See* attached order on Summary Judgment Motion.

[2] See the adopting Magistrate Reports (D.E. Nos. 71, 73, 95, and 107).

Street where the cargo was stolen. **31:21-23.** Inter-Florida Container Transport rented the property from Defendant 10997.

Inter-Florida Container Transport has an office at 9455 NW 109th street, but only dispatch works at that location. **36:1-8.** While there was disputed testimony that Inter-Florida Container Transport had no corporate secretary, this Court finds that Leonel Diaz was the corporate secretary for Inter-Florida Container Transport. **36:9-10.** Inter-Florida Container Transport does not conduct board meetings of its officers and directors. **36:11-13.** Inter-Florida Container Transport does not pay maintenance on the storage yard, and Inter-Florida Container Transport's bills are paid by Miami Trucking. **36:8-13.** Indeed, Mercedes Torres, in her capacity as an employee of Miami Trucking is responsible for the payment of Inter-Florida Container Transport's bills. **37:12-16.** Inter-Florida Container Transport's only asset is a checking account, and the only signatories to that account are Mercedes and Mayline Torres. **38:1-14.** There are signs up throughout the storage yard that say "Inter Florida Container Transport," but Inter-Florida Container Transport rents the property from Defendant 10997 pursuant to an unwritten lease. **38:15-25; 99:3-5.**

Regarding the events of June 10 through 12, 2011, the interpersonal and intercorporate relationships are equally tangled. Between 11:30 a.m. and 1:30 p.m. on June 10, 2011, representatives from FNS, Inc. and Hanjin Shipping communicated with Inter-Florida Container Transport regarding weekend storage fees and availability. **Ex. 8.** The emails from Inter-Florida Container Transport carried Mercedes Torres name. **Ex. 8.** However, these emails were actually written by Mayline Torres. **41:7-42:3; 92:25.** Inter-Florida Container Transport charged the companies fees to store the trucks and chassis at the yard. **42:8; 94:4-11.** When the stolen trucks were recovered, empty, both Mercedes Torres and Leonel Diaz drove them back to the yard. **43:1-8.**

After the containers were recovered, Mayline Torres sent a report to Hanjin detailing the steps taken after the loss was discovered. As part of that message, Mayline Torres represented to Hanjin that Leonel Diaz was the owner of Inter-Florida Container Transport. **Ex. 3; 95:7-16.** Mayline Torres filled out the incident report in response to an email that was sent to Mercedes Torres. **Ex. 3.** Leonel Diaz is in charge of the yard and directing truck drivers as to where to park. **47:23-25.**

Leonel Diaz admitted to owning the storage yard. **65:12-13.** The yard is owned in the name of Defendant 10997, and Leonel Diaz owns 50% of Defendant 10997. **65:16-25.** The storage yard does not always have 24-hour security. **48:1-7.** The decision on whether to have security personnel present is made by Mercedes or Mayline Torres. **48:3-6.** Inter-Florida Container Transport only hired guards for nights when trucks were scheduled to enter or exit the yard, and that decision was made by Mercedes and Mayline Torres. **62:9-17.** However, Leonel Diaz was concerned enough about the safety of the cargo that he asked an employee, Frank Soto, to drive by and check on the cargo in the yard on Saturday and Sunday while he was away. **77:1-24.** When Frank Soto discovered that the containers were gone, he called Leonel Diaz to inform him. **78:1-12.** Neither Inter-Florida Container Transport nor any of its agents ever communicated in writing to Hanjin or FNS that the storage yard did not have 24-hour security prior to the containers being dropped off at the yard. **107:12-16.**

There was not a guard on the night of Saturday, June 11 to Sunday, June 12, even though there had been a guard the night before. **61:17-19; 62:6-9.** On the night of June 12, 2011, three individuals cut through the fence and broke into the yard. **103:8-10.** They hooked trucks up to the containers and removed them from the yard, then came back for the third container. **103:20-104:7.** The thieves had the courtesy to return one of the empty containers when they returned for the third. While there were video cameras recording the yard on the night the cargo was stolen, nobody was

monitoring the video feed. **48:23-49:1.** Mayline Torres watched the video at a later time. **107:16-18.**

Defendant 10997, despite owning the yard and renting it to Inter-Florida Container Transport, has no income. **74:9-10.** Indeed, it has never had any income. **74:11-12.** Defendant 10997 does not have board meetings. **74:15-16.** Defendant 10997 has no bank account. **84:5.** Defendant 10997's property taxes are paid by Miami Trucking. **84:16-19.** Based on the evidence, it is clear that Leonel Diaz controls Defendant 10997.

### III. <u>Conclusions of Law</u>

Plaintiff's suit alleges four counts, breach of contract against Inter-Florida Container Transport, bailment against all Defendants, negligence against all Defendants, and liability for alter ego and instrumentality of fraud against Diaz. This court will first determine Inter-Florida Container Transport's liability under COGSA. It will then address the Plaintiff's alter ego theories. It will finally address bailment and negligence.

<u>1. Inter-Florida Container Transport's Breach of Contract</u>

"COGSA provides the exclusive remedy for damages during the time after goods are loaded on a ship and until they are removed from the ship. Parties may contract to extend the coverage period to include land shipment portions of the transit." *Garland Corp. v. Evergreen Marine Corp.*, 2009 WL 1660311 at *3 (S.D. Fla. June 15, 2009) (Cohn, J.). Once a shipper establishes a *prima facie* case under COGSA, the burden of proof then shifts to the carrier to show that it either (1) exercised due diligence to prevent loss or damage to the cargo, or (2) the harm was caused by an "excepted cause" listed in section 4(2) of COGSA. *Terman Foods Inc. v. Omega Lines*, 707 F.2d 1225, 1227 (11th Cir. 1983).

One of the excepted causes under section 4(2) is that a carrier is not responsible for loss or

damage "arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier. 46 U.S.C. § 30701, sec. 4(2)(q). The burden of proof is on the defendant claiming the benefit of the q-clause "to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage." *Id. See PT Indonesia Epson Indus. v. Orient Overseas Container Line, Inc.*, 219 F.Supp.2d 1265, 1271 (S.D. Fla. 2002) (Jordan, J.). The protections and defenses of COGSA can be extended to a carrier's agents and contractors through a Himalaya Clause in bill of lading. *Fireman's Fund Inc. v. Tropical Shipping and Constr. Co., Ltd.*, 254 F.3d 987, 993 n.1 (11th. Cir. 2001). Indeed, "a single Himalaya Clause can cover both sea and land carriers downstream." *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 29 (2004).

Because this Court had previously found that the LCD monitors were delivered into Inter-Florida Container Transport's possession, custody, and control in good order and condition, and that the LCD monitors were lost or stolen while in Inter-Florida Container Transport's possession, custody, and control, this Court's analysis turns to whether the Defendants have satisfied any potential defenses available to them.

In the case at bar, the Hanjin Bill of Lading provides that "the carrier shall be responsible for and shall enjoy the immunities and limitation against loss or damage pursuant to the applicable Hague/Visby/COGSA legislation for all periods when the Goods are in the actual or constructive custody of the carrier." COGSA's protections were extended to Inter-Florida Container Transport through the Himalaya Clause. The Himalaya Clause in the Hanjin Bills of Lading read:

> The Carrier shall be entitled to sub-contract on any terms the whole or any part of the handling, storage, or carriage of the Goods and any and all duties whatsoever undertaken by the Carrier in relation to the Goods. Every servant, agent and sub-

> contractor ... and the agents of each shall have the benefit of all provision herein for the benefit of the Carrier as if the provisions were expressly for their benefit; and in entering into this contract of carriage, the Carrier does so not only on his own behalf but also as agent for all such servants, agents and sub-contractors tot the fullest extent permitted by the law applicable to Himalaya Clauses.

**D.E. No. 74-3 at 17.**

Thus, Inter-Florida Container Transport is entitled to raise a defense under COGSA. Inter-Florida Container Transport has raised the q-clause as a defense. Under this COGSA defense, "[n]either the carrier nor the ship shall be liable for loss or damage arising from ... [a]ny other cause arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier." 46 U.S.C. § 30701 Sec. 4(2)(q). It is the burden of the party raising the q-clause defense "to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage." *Id.; See PT Indonesia Epson Indus. v. Orient Overseas Container Line, Inc.*, 219 F.Supp.2d at 1271. Under the facts as discussed above, Inter-Florida Container Transport has not made that showing.

Inter-Florida Container Transport operated and managed the storage yard it leased from Defendant 10997. The goods were stolen while in the storage yard, after Inter-Florida Container Transport had taken possession of them from the shippers. The keys were left inside the trucks when they were stored over the weekend. Inter-Florida Container Transport chose not to have anyone patrolling the storage yard on the night the goods were stolen, despite the fact that both Mayline Torres and Leonel Diaz had expressed some concern about the safety of the goods over the weekend. Indeed, Diaz even had Frank Soto check on the yard once a day. Inter-Florida Container Transport filmed the premises, but did not have anybody there to watch the film. Because of these facts, this Court finds that Inter-Florida Container Transport cannot "show that neither the actual fault or

privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage." Thus, Defendant Inter-Florida Container Transport is not shielded from liability by the q-clause.

Defendant cites *PT Indonesia Epson Indust. V. Orient Overseas Container Line, Inc.*, to support its position that Inter-Florida Container Transport is covered by the Q-clause. In that case, the shipper sued the carrier because the cargo was stolen from the carrier's agent, a trucking company, after the carrier had offloaded the goods but prior to final delivery. *Id.* at 1268. The facts of that case show that the trucker stopped at a cafeteria, and, upon return to the vehicle, was robbed at gunpoint of the truck. *Id.* Based on those facts, the court found that the q-clause would apply to shield defendant if the trier of fact found that the driver of the truck was not involved in the loss of cargo. *Id.* at 1274. Thus, it held that summary judgment in plaintiff's favor was inappropriate. *Id.* at 1275.

Unfortunately for Defendants, *PT Indonesia Epson* is factually distinguishable from the case at bar, and provides defendants no shield. First, unlike in the case at bar, Defendant in *PT Indonesia* had no control over the premises where the cargo was stolen, and thus no duty to provide reasonable security could attach. Thus, the instant case is distinguishable, as the cargo was stolen from a lot operated by Inter-Florida Container Transport, with Inter-Florida Container Transport identifying signage. Inter-Florida Container Transport chose to store the cargo there overnight, and elected not to have a security guard present. Thus, unlike the Defendant in *PT Indonesia Epson*, Inter-Florida Container Transport cannot claim that the loss arose without its fault and neglect.

Additionally, Inter-Florida Container Transport would not be liable under COGSA if it "exercised due diligence to prevent loss or damage to the cargo." Under the facts of this case, this

Court finds that Inter-Florida Container Transport did not exercise due diligence to prevent loss or damage. Despite its expressed concern for the cargo, Inter-Florida Container Transport did not have a security guard and did not have anybody monitoring the video tape. The keys were left inside the vehicles. Beyond having a fence and having lights, Inter-Florida Container Transport took no action at all regarding the safety of the cargo. Under these facts, this Court finds that Inter-Florida Container Transport did not exercise due diligence to prevent loss or damage to the cargo.

For these reasons, this Court finds in favor of the Plaintiff regarding the breach of contract under COGSA claim. This Court finds Defendant Inter-Florida Container Transport liable under COGSA for the loss of the goods.

2. Alter Ego

Courts ruling over maritime matters have the power to pierce the corporate veil in order to reach the alter egos of a corporate defendant. *See MSC Mediterranean Shipping Co. SA Geneva v. Metal Worldwide, Inc.*, 884 F.Supp.2d 1269, 1276 (S.D. Fla. 2012) (Scola, J.). *Hilton Oil Transport v. Oil Transport Co., S.A.*, 659 So.2d 1141, 1151 (Fla. Dist. Ct. App. 1995). "The prerequisites for piercing the veil in federal maritime law are the same as elsewhere." *Popescu v. CMA CGM*, 2009 WL 5606131 at *8 (S.D. Fla. Nov. 5, 2009) (Altonaga, J.). Defendants have raised an issue of whether this court should apply federal or Florida law regarding piercing the corporate veil. However, this issue is not determinative, as "the determination is the same under [Florida] state law and federal common law." *Aldana v. Fresh Del Monte Produce, Inc.*, 2007 WL 7143959 at *5 (S.D. Fla. Aug. 30, 2007) (Simonton, J.). Indeed, for Florida state courts presiding over maritime matters, "[t]he law to be applied is federal common law." *Hilton Oil Transport v. Oil Transport Co., S.A.*, 659 So.2d at 1151.

To pierce the corporate veil, "the individual must have used the corporate entity to perpetrate a fraud or have so dominated and disregarded the corporate entity's corporate form that the corporate entity primarily transacted the individual's personal business rather than its own corporate business." *Lobegeiger v. Celebrity Cruises, Inc.*, 2011 WL 3703329 at *15 (S.D. Fla. Aug. 23, 2011) (Altonaga, J.). Reaching the "alter egos" of corporations is especially valuable "where the separate identity of two corporations should be disregarded where one corporation becomes the conduit of another" or "where the near identity of two corporation should be disregarded in order to prevent manifest injustice to third parties." *Talen's Landing Inc. v. M/V Venture II*, 656 F.2d 1157, 1160 (5th Cir. 1981).[3] Some factors used by courts in determining whether to pierce the corporate veil are: (1) common or overlapping directors and officers, (2) use of same corporate office, (3) inadequate capitalization of subsidiary, (4) financing of subsidiary by parent, (5) parent's use of subsidiary's property and assets as its own, (6) informal intercorporate loan transactions, (7) decision-making for subsidiary by parent and principles, (8) non-observance of formal legal requirements, (9) existence of fraud, wrongdoing, or injustice to third parties. *Id.* at *15 n.12; *In re M/V Rickmers Genoa Litigation*, 622 F.Supp.2d 56, 75 (S.D.N.Y. 2009).

Many of the factors necessary to pierce the corporate veil are present with regards to the relationship between Defendant 10997 and Inter-Florida Container Transport and the relationship between Defendant 10997 and Diaz. Regarding the relationship between Inter-Florida Container Transport and Defendant 10997, this Court first notes that there is not a parent/subsidiary relationship between the two companies. This Court will further note that its legal genealogy analysis

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all the decision of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Talen's Landing* was decided on September 25, 1981.

into the family tree of corporations owned and operated by Leonel Diaz, Mercedes Torres and Mayline Torres is frustrated by Plaintiff's choice to not sue Miami Trucking and/or Mercedes Torres. Nevertheless, it seems clear that there has been substantial blurring of the line between the two corporations. *See generally Century Sr. Svcs. v. Consumer Health Benefits Ass'n, Inc.*, 770 F.Supp.2d 1261, 1265-66 (S.D. Fla. 2011) (Martinez, J.). There is a large overlap between officers and directors. Leonel Diaz is the 50% owner of Defendant 10997 and the corporate representative. Leonel Diaz is also the treasurer and secretary of Inter-Florida Container Transport, and he has been a director since incorporation.

Evidence was presented that both firms are undercapitalized. Defendant 10997's only asset is the storage yard. Defendant 10997 receives no income, and does not even have a bank account. Inter-Florida Container Transport's only asset is its checking account. This Court finds that this was a conscious decision to separate the assets of what is functionally one entity to shield liability. Indeed, the storage yard itself was owned by Defendant 10997 but covered with Inter-Florida Container Transport markings. The transactions between the companies were informal. The lease between the two companies was unwritten, and rent was paid by a third company, Miami Trucking. Likewise, Miami Trucking paid all of Defendant 10997's property taxes and money owed by Inter-Florida Container Transport.

Regarding the decision making functions, Defendants argue that the Leonel Diaz' was only in charge of the yard, and that Mayline and Mercedes Torres controlled Inter-Florida Container Transport. However, the events of June 10-12 show, at a minimum, serious blurring of corporate and interpersonal lines. Mayline and Mercedes Torres were responsible for determining whether the storage yard had overnight security, not Leonel Diaz. Leonel Diaz instructed Frank Soto to check on the yard once a day. When Frank Soto discovered that the containers were gone, he called Leonel Diaz. When the stolen containers were found, both Mercedes Torres and Leonel Diaz drove to

retrieve them. In an email to Hanjin explaining the incident, Mayline Torres, using Mercedes Torres' email address, said that Leonel Diaz was the owner of Inter-Florida Container Transport.

Finally, both companies ignored corporate formalities. Neither company held board meetings. The evidence showed that neither company had ever held a board meeting.

In looking at the factors, this Court finds substantial cause to pierce the corporate veil and finds that Defendant 10997 and Inter-Florida Container Transport were alter egos of each other.

Regarding the relationship between Defendant 10997 and Diaz, the analysis is much the same. Diaz was the 50% owner of Defendant 10997, along with Jose Sigler. However, Defendant did not present any evidence that Sigler had ever participated in any decision involving Defendant 10997 since its inception. Indeed, Sigler was not deposed nor did he testify at trial. As discussed, Defendant 10997 was undercapitalized, with the storage yard being its only asset. Defendant 10997 did not have any income. Defendant 10997 did not have board meetings. Based on this evidence, this Court finds that Diaz "so dominated and disregarded the corporate entity's corporate form that the corporate entity primarily transacted the individual's personal business rather than its own corporate business." *Lobegeiger v. Celebrity Cruises, Inc.*, 2011 WL 3703329 at *15. To conclude, this court finds that Leonel Diaz, Defendant 10997, and Inter-Florida Container Transport were all alter egos of each other.

### 3. Bailment and Negligence

Plaintiff has also sought damages under bailment and negligence theories. Given that this Court has found that COGSA applies in this case, this Court cannot find in Plaintiff's favor on the bailment and negligence claims. "[B]ecause COGSA applies, it provides [Plaintiff's] exclusive remedy." *Polo Ralph Lauren L.P. v. Tropical Shipping & Const. Co.*, 215 F.3s 1217, 1220 (11th Cir. 2000). COGSA generally only applies between the time the cargo is loaded on the ship and before it is removed from the ship. *Id.* As discussed above, "COGSA also gives the

option of extending its rule by contract." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 29 (2004); *UTI U.S., Inc. v. Bernuth Agencies, Inc.*, 2012 WL 4511304 at *2 (S.D. Fla. Oct. 1, 2012) (Altonaga, J.). "COGSA, when it applies, supersedes other laws." *Id.* The rationale behind this limitation is, as the Eleventh Circuit and other courts have explained, a COGSA claim "comprises elements of both contract, arising from the breach of contract of carriage, and tort, issuing from the breach of the carrier's duty of care." *Id.* at 1221. Indeed, courts in these district have previously dismissed negligence and bailment claims after determining that COGSA applies. *UTI U.S., Inc. v. Bernuth Agencies, Inc.*, 2012 WL 4511304 at *2.

COGSA provides a plaintiff with one cause of action for the lost goods. *Id.* Because this Court finds that COGSA applies in this case, this Court finds that Plaintiff negligence and bailment claims are preempted by COGSA. Thus, this Court finds for defendants on those claims.

### III. Conclusion

This Court finds in favor of Plaintiff on its claims for breach of contract and alter ego (Counts 1 and 4). This Court dismisses Plaintiff's claims for bailment and negligence as preempted by COGSA (Counts 2 and 3). This Court hereby ORDERS that Plaintiff have recovery from Defendants Inter-Florida Container Transport, Defendant Defendant 10997, and Leonel Diaz in the amount of $552,547.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd day of August, 2013.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

United States Magistrate Judge Alicia M. Otazo-Reyes

Counsel of Record